# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY V. WYATT, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 04-CV-939-TCK-SAJ |
| OCCIDENTAL PETROLEUM CORPORATION, | ) |
| Defendant(s). | ) |

## OPINION AND ORDER[1]

Defendant has moved to dismiss Plaintiff's first and second causes of action. Plaintiff has moved to amend Plaintiff's complaint. The motions were referred to the United States Magistrate Judge for decision, and the parties consented. Defendant's motion to dismiss Plaintiff's first and second cause of action is **granted in part and denied in part** as further detailed in this Order. [Docket No. 6-1]. Plaintiff's motion to amend the complaint is **granted**. [Docket No. 21-1].

### I.   FACTS AND PROCEDURAL BACKGROUND

Plaintiff has been employed by Defendant for over 24 years and was 70 years old at the time that she filed her lawsuit. Plaintiff is an employee in the Human Resources Department.

Defendant restructured the Human Resources Department, and offered severance packages to at least one employee in the Human Resources Department. Defendant asserts that that individual's job was eliminated and the severance was offered because

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

of the elimination of the job. Plaintiff acknowledges that the individual no longer works for Defendant.

Plaintiff alleges age discrimination because Defendant (1) restructured Plaintiff's job resulting in significantly different responsibilities and in less favorable treatment, and (2) Defendant refused to consider Plaintiff's request for retirement with a severance package. [Docket No. 1-1], Plaintiff's Complaint, ¶ 4.

Plaintiff complains that Plaintiff was subjected to disparate treatment in violation of the law because Defendant failed to offer Plaintiff a severance package although Defendant offered other employees severance packages. Plaintiff additionally maintains that Plaintiff's job was changed resulting in a tangible employment action and that Plaintiff was treated less favorably than other workers not in Plaintiff's protected class.

## II.     MOTION TO DISMISS ADEA CLAIM

### A.     Failure to Offer Severance is Not An Adverse Employment Action

Defendant moves to dismiss arguing that Plaintiff is seeking to expand employment law by making an employer liable for deciding not to fire an employee. Defendant asserts Plaintiff has not alleged an adverse employment action, and that a decision to retain an employee, rather than offer an employee severance, is not actionable.

Plaintiff maintains that this is not an action brought because Defendant failed to fire Plaintiff. Plaintiff asserts that Plaintiff is the only individual who was treated in a manner

differently from other individuals and the only employee who did not receive the opportunity to resign with a severance package.[2/]

In *Jones v. Reliant Energy-Arkla*, 336 F.3d 689, 692 (8th Cir. 2003), the Eighth Circuit Court of Appeals addressed whether the failure to offer a severance package can constitute an adverse employment action. Jones, an African-American was hired in 1990 by ARKLA. ARKLA was later purchased by Reliant and reorganized. As part of the reorganization, Reliant closed the office where Jones was located. Jones, prior to the closing of the office, was trained as a "Training Champion" and began traveling to several locations with an assignment in Monticello beginning in March 2000. In June 2001, Jones requested and received a permanent position at Reliant's Pine Bluff Warehouse. Jones, at the time of the action, continued her employment with Reliant.

A different individual, a Caucasion, also worked at Pine Bluff until it closed in April 1999. This individual was transferred to Little Rock, and later terminated when the position to which she transferred was eliminated. The terminated individual received a lump sum severance.

Jones disputed that the other individual's position was transferred. Jones asserted that the position was relocated, and that Jones was discriminated against because she was not given the option of accepting a severance package rather than relocating. The Eighth Circuit Court of Appeals upheld the district court's grant of summary judgment to the Defendant.

---

[2/] Defendant disputes these facts, but for the purpose of a motion to dismiss, the Court will presume the facts as true.

To establish a prima facie case of disparate treatment in a race discrimination claim, the plaintiff must show (1) she is within the protected class, (2) she was qualified to perform her job; (3) she suffered an adverse employment action, and (4) non-members of her class, e.g., white employees, were treated differently.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard."

Jones does not argue she suffered a reduction in responsibilities or pay. Nor does she argue relocations constitutes an adverse employment action. Instead, <u>Jones contends she suffered an adverse employment action because she was not permitted to take advantage of a benefit provided by Reliant, i.e., severance pay</u>. We disagree.

We have previously declined to find an employer's failure to give severance benefits constitutes an adverse employment action. In *Cooney v. Union Pacific R.R. Co.*, 258 F.3d 731, 733-34 (8th Cir. 2001), the plaintiffs were a group of railroad employees who applied for but were refused a buyout/severance package. The plaintiffs were not selected for the buyout/severance program and each of them continued to work for the company at the same rate of pay and with the same level of responsibilities. The plaintiffs sued arguing the company's process for selecting participants for the buyout violated the Age in Employment Discrimination Act of 1967. The plaintiffs argued the buyout program or severance package was a benefit, and the company's refusal to award those benefits constituted an adverse employment action. On appeal, this court held that employees who are denied severance but retain their jobs have not suffered an adverse employment action. "Even if the buyouts can be characterized as benefits, we do not believe the denials caused appellants to suffer an adverse employment action."

An employee claiming discrimination in a severance pay case "may make out a prima facie case of employment discrimination by showing . . . she was subject to an adverse employment action involving severance pay. . . ." Jones contends Reliant's refusal to offer her the option of severance versus transfer resulted in an adverse employment action. <u>An employer's failure to award severance benefits, however, is not an adverse employment action.</u> Nor is an employer's decision to transfer an employee an adverse employment action.

-- 4 --

> Consequently, the failure to give an employee the option of choosing between two non-adverse employment actions – in other words, the employer's decision to make the choice itself – cannot transform the outcome into an adverse employment action. <u>We recognize Jones would have preferred termination with severance instead of transfer. We will not, however, interfere with Reliant's decision to maintain Jones's employment even if it offered other employees a choice. Any other holding would lead to the absurd result that Jones suffered an adverse employment action because she was *not* fired.</u>

*Jones*, 336 F.3d at 691-92 (*citations omitted*, *emphasis added*). See also 1 Fair Employment Practices § 2:286, HRS-FEP (July 2005) (adverse employment action not established by failure to award severance benefits); *Cooney v. Union Pac. R.R. Co.*, 258 F.3d 731, 733-34 (8th Cir. 2001) (employees denied severance and retained have not suffered adverse employment action); *Walter E. McDonald v. ExxonMobil Chemical Co.*, 2002 U.S. Dist. LEXIS 1250 (Jan. 9, 2002 S. D. Tex.) ("Refusing to fire an employee is not an adverse employment action as that term has traditionally been understood.").

Plaintiff refers the Court to two cases in which denial of severance pay was found to have adverse employment consequences. In each of the cases relied upon by Plaintiff, the individual asserting a cause of action was terminated. In *McGuinness v. Lincoln Hall*, 263 F.3d 49 (2nd Cir. 2001), plaintiff, a white woman, was terminated two days prior to the termination of plaintiff's colleague, a black man. Plaintiff alleged that she was offered a less desirable severance (less money) than her colleague. The court found that the plaintiff had alleged a *prima facie* case. *McGuinness* is obviously different from the case currently before the Court. In *McGuinness*, the plaintiff was terminated and was paid a substantially lower amount of money in her severance than a colleague who was of a different gender and was terminated within two days of plaintiff. The plaintiff in *McGuinness* obviously

suffered an adverse employment action because her job was terminated. She also alleged a *prima facie* case of discrimination.

The other case relied upon by Plaintiff is also easily distinguished from the case presently before the Court. In *Equal Employment Opportunity Commission v. Borden's Inc.*, 724 F.2d 1390 (9th Cir. 1984), Borden closed its plant; fired its employees, and paid severance to all employees except those eligible for retirement. Sixteen employees were eligible for retirement and none received severance pay. The court held that the denial of severance pay to a group of individuals because of their age was purposeful discrimination. Plaintiff characterizes this case as important because it illustrates that the loss of severance benefits constitutes an adverse employment action. However, all of the employees in *Borden* were fired and those who were over age 55 were denied severance. This is an obvious adverse employment action. By contrast, Plaintiff was not fired, and was not entitled to severance because she continued her employment.

Plaintiff would have preferred retirement and a severance package. However, what Plaintiff would have preferred does not automatically translate into an objective adverse employment action. Plaintiff remains employed. Plaintiff is not entitled to severance unless she is terminated. Plaintiff has not suffered an adverse employment action by the continuation of her employment. The Court concludes that Plaintiff has not suffered an adverse employment action and cannot maintain an action based upon Defendant's failure to terminate Plaintiff and offer Plaintiff severance.

### B. Plaintiff Has Sufficiently Alleged Particular Adverse Consequences of Continued Employment

Plaintiff asserts, in her complaint, that the "restructuring of Plaintiff's job constitutes a tangible employment action with significantly different responsibilities. In assigning and modifying the Plaintiff's job, she was treated less favorably than others in her class." See [Docket No. 1-1], Plaintiff's Complaint, ¶ 20. Plaintiff asserts that her job was substantially modified and she was subjected to disparate treatment because of her age.

Defendant moves to dismiss Plaintiff's complaint asserting that a mere inconvenience or alteration of job responsibilities is not an adverse employment action.

The cases relied upon by the parties were all decided at the summary judgment stage. *Sanchez v. Denver Public Schools*, 164 F.3d 527 (10th Cir. 1998) (appeal to Tenth Circuit Court of Appeals from summary judgment for school district); *Annett v. University of* Kansas, 371 F.3d 1233 (10th Cir. 2004) (adverse employment action not limited to loss of wages or benefits, but must carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects"); *McCrary v. Aurora*, 57 Fed. Appx. 362 (10th Cir. 2003). *See also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

To survive a motion to dismiss, a plaintiff must allege a cause of action. In *Sanchez*, relied upon by Defendant, the Tenth Circuit Court of Appeals addressed a cause of action for adverse employment action.

> The Tenth Circuit liberally defines the phrase "adverse employment action." *See Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1264 (10th Cir.1998); *Jeffries v. Kansas,* 147 F.3d 1220, 1232 (10th Cir.1998). Such actions are not simply limited to monetary losses in the form of wages or benefits.

> *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986- 87 (10th Cir.1996). Instead, we take "a case-by-case approach," examining the unique factors relevant to the situation at hand. *Jeffries,* 147 F.3d at 1232. Nevertheless, we will not consider "a mere inconvenience or an alteration of job responsibilities" to be an adverse employment action. *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, ----, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998) (conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *Spring v. Sheboygan Area Sch. Dist.,* 865 F.2d 883, 886 (7th Cir.1989) (principal's change in assignment was not an adverse employment action despite her increased commute and belief that the public perceived the transfer "as a 'nudge towards retirement' ").

*Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998).

Plaintiff alleges that the restructuring of her job constituted a tangible employment action leaving Plaintiff with significantly different job responsibilities and assigning and modifying her job responsibilities.  Defendant asserts that the change was not tangible.  Plaintiff has made the bare bones allegations sufficient to allege a cause of action, and sufficient to survive a motion to dismiss.   Defendant's claim that the asserted "tangible" change is insufficient is more appropriate at a motion for summary judgment stage.

Plaintiff is permitted to proceed with her ADEA claim on the theory of tangible employment action due to the restructuring of her job and job duties.  Plaintiff is not permitted to proceed with her action based on failure to pay severance.

## II. MOTION TO DISMISS NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendant asserts that Oklahoma does not recognize the negligent infliction of emotional distress as an independent tort, but that it is actually the tort of negligence. Defendant also asserts that Plaintiff has failed to plead damages and that damages are a necessary element of the cause of action. Defendant notes that Plaintiff may recover for mental anguish caused by physical suffering, or mental anguish which inflicts physical suffering – but not mental anguish that is only mental damages.

In her Complaint, Plaintiff alleges that she has suffered emotional trauma because of certain actions on the part of Defendant. Plaintiff alleges no physical damages. The cases referenced by both parties explain that the negligent infliction of emotional distress is not an independent tort in Oklahoma, and that the Plaintiff must first allege and prove the elements of a tort – duty, breach, and injury resulting from the breach.

> Oklahoma courts say that negligent infliction of emotional distress is not an independent tort, but is in effect the tort of negligence. A Plaintiff therefore cannot proceed on a negligent infliction of emotional distress theory of liability separate from negligence, and the traditional elements of duty, breach of duty, causation, and damages apply. . . .
>
> * * *
>
> In Oklahoma, damages for mental anguish are recoverable only if they are "produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish." This means that "[u]pon proper proof, the Plaintiff may recover for mental anguish where it is caused by physical suffering and may also recover for mental anguish which inflicts physical suffering."

*Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002) *citations omitted.*

Plaintiff refers to *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143 (10th Cir. 1999), as supporting Plaintiff's argument that the damages alleged by Plaintiff (emotional distress, embarrassment and humiliation) are sufficient. In *Atchley*, the Court does not, in detail discuss the underlying allegations, but does note that the Defendant "conceded [that] plaintiff's testimony alone may serve as evidence of emotional distress. . . ." *Atchley*, 180 F.3d at 1149. Contrary to this case, the Defendant in this action challenges Plaintiff's assertion of damages.

Plaintiff alleges a cause of action for negligent infliction of emotional distress, asserting that she suffered emotional distress, embarrassment, and humiliation. The Court concludes that as pled in the Complaint, Plaintiff has not sufficiently plead a cause of action under Oklahoma law.

In the motion by Plaintiff to file an amended complaint, Plaintiff has articulated more specific damages. Plaintiff asserts that Plaintiff suffers sleeplessness, nausea, headaches, intestinal problems and other physical problems. The Court is simultaneously granting Plaintiff the right to amend to allege a cause of action. The Court concludes, based on the arguments of the parties at this stage of the litigation, that Plaintiff's cause of action for negligent infliction of emotional distress, as presented in the amended complaint, may proceed. *See Wilson*, 303 F.3d at 1213 ("Oklahoma law obligated Ms. Wilson to provide proof of *some* physical injury, whether incurred contemporaneously with her emotional injury, or whether as a direct consequence of her emotional injury. The Hospital's claim that there is no evidence that Ms. Wilson suffered any physical harm is not quite true. Some evidence came from her treating psychiatrist, who testified that following Ms.

Wilson's resignation from the Hospital, she described increased feelings of humiliation, intimidation, very very strong subjective unpleasant feelings, as well as . . . increasing depression. She had difficulty sleeping, crying, sad, gained weight, lost interest in working, felt not safe working as a nurse. . . .").[3]

### III. PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT

Plaintiff has moved to amend her complaint to add claims which Plaintiff asserts was authorized for the first time by *Lanman v. Johnson County, Kansas*, 393 F.3d 1151 (10th Cir. 2004). Defendant opposes the motion asserting it is not timely and that it is futile.

Initially, Defendant asserts that the motion to amend is untimely and will result in undue prejudice to Defendant. The Court is not persuaded by this argument and will not deny the amendment based upon the unspecified prejudice referenced by Defendant.

With respect to Plaintiff's hostile work environment claim, Defendant asserts that the proposed amendment is futile because Plaintiff failed to appropriately exhaust her administrative remedies which is a prerequisite to bringing an employment discrimination claim. Defendant notes the "crucial inquiry is whether the claims set forth in the civil complaint fall within the scope of the investigation that could reasonably be expected to grow out of the EEOC charges." *Harrell v. Spangler*, 957 F. Supp. 1215, 1219-20 (D. Kan. 1997). *See also Brown v. Hartshorne Public School District*, 864 F.2d 680 (10th Cir. 1988) ("[W]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or

---

[3] Defendant, in Defendant's response to Plaintiff's motion to amend, notes that the trial court is to play a gatekeeping role in determining whether alleged conduct is sufficiently extreme or outrageous. The Court concludes that the gatekeeping described by Defendant is better left for the summary judgment stage.

-- 11 --

reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.") *citations omitted.*

Plaintiff's proposed amended complaint alleges a hostile work environment, created by Defendant in an effort to "force" Plaintiff to retire.  Plaintiff submitted to the EEOC an "Account of Work Situation" and additionally completed a "Charge of Discrimination."  *See* Exhibit A to Plaintiff's Brief, [Docket No. 23-1], and Exhibit A to Defendant's Brief, [Docket No. 22-1].  In her Charge of Discrimination, Plaintiff noted that she had requested severance but was denied, had been denied promotions, had received smaller salary increases, and was paid less than other male employees.  [Docket No. 22-2], Exhibit A.  Plaintiff additionally indicated that she believed that she had been discriminated against because of her age in violation of the Age Discrimination in Employment Act of 1967.  In a document titled "Account of Work Situation" which Plaintiff maintains was submitted to the EEOC, Plaintiff notes that her job duties were substantially changed by Defendant and that she had been "effectively sidelined."  Plaintiff's submissions to the EEOC appear sufficient to have included either as an area that would have been investigated or as reasonably related to her initial allegations to permit the amendment sought by Plaintiff.

Defendant additionally asserts that the Court should deny Plaintiff leave to amend to include a "disparate impact" theory of age discrimination.  Defendant focuses on futility and timeliness.  The Court has previously discussed futility with respect to the hostile work environment claim and the same conclusion applies with regard to the disparate impact claim.

Defendant additionally notes, however, that Plaintiff has failed to identify any policy or procedure that "result[s] in the illegal disparate impact treatment of the Plaintiff because of her age." [Docket No. 21-2], Exhibit "A" at 4.  Defendant asserts that it is impossible to ascertain from Plaintiff's complaint what policy or procedure resulted in the alleged disparate impact or how the policy or procedure affected Plaintiff.  The Court agrees and concludes that Plaintiff's proposed amended complaint has not sufficiently articulated a disparate impact claim.  The complaint must be sufficient to apprise Defendant of the clam that Plaintiff is asserting.  *See Smith v. City of Jackson, Miss.*, 125 S. Ct. 1536, 1544 (March 30, 2005) ("[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is " 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.' ") (*citations omitted, emphasis in original*).  The Court concludes that Plaintiff has not sufficiently articulated a disparate impact claim.

**IV.    CONCLUSION**

Plaintiff's claim under the ADEA may proceed with respect to Plaintiff's theory that she was discriminated against because Plaintiff's job was substantially modified resulting in a tangible employment action and that Plaintiff was subjected to a hostile work environment.  Plaintiff has not sufficiently plead a claim that Plaintiff was discriminated against due to the denial of her severance or based on disparate impact.  Plaintiff's ADEA claim based upon severance and disparate impact are dismissed.

Plaintiff's motion to amend her complaint is granted, and Plaintiff may file her amended complaint which was attached to Plaintiff's motion to file first amended complaint. Plaintiff may not proceed on her severance claim and her disparate impact claim, which are hereby dismissed.

IT IS SO ORDERED.

Dated this 11th day of October 2005.

Sam A. Joyner
United States Magistrate Judge